Jennifer Lerma
Juan Mauricio Lerma
6021 E 27th Street
Tucson, Arizona 85711
(520) 330-8281
Piha520@outlook.com
Self-Representation

FILED ___ LODGED
RECEIVED ___ COPY

JUL 1 9 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| (1) JENNIFER ANN LERMA, formerly known as Jennifer Ann Gray, individually; JENNIFER ANN LERMA and JUAN MAURICIO LERMA, a married couple. | Case No.:  CV-19-00368-TUC-JGZ-PSOT |
| Plaintiffs, | **COMPLAINT** |
| vs, | |
| STATE OF ARIZONA PIMA COUNTY ATTORNEY'S OFFICE STATE BAR OF ARIZONA NICOLE KASETA ROBERT CLAYTON HERNANDEZ JACOB AMARU KIMBERLY LIPKO LENORA ANDERSON JULIE HAZEN-YEE LYNN ERIBE | Assigned to Honorable _____ |
| Defendants. | |

PLAINTIFFS, JENNIFER ANN LERMA, formerly known as Jennifer Ann Gray, individually, JENNIFER ANN LERMA and JUAN MAURICIO LERMA, a married couple, for their complaint alleges as follows:

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE: LR Civ 7.1(b)(1)
(Rule Number/Section)

1. This is a civil rights action in which Plaintiff seeks relief for the violation of her rights secured by 42 USC 1983, 1988, the Fifth Amendment (deprivation of property and liberty without due process) and the Fourteenth Amendment (deprivation of liberty and property without due process) the Freedom of Information Act, the United States Constitution, laws of the United States and statutes of Arizona. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331, 1343, 2201.

2. PLAINTIFF seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

3. This action is brought pursuant to 28 § USC 1331, 42 § USC 1983, *Monroe v. Pape*, 365 U.S.167 (1961), *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

4. This Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§1331 and 1343(3) in that the controversy arises under the United States Constitution and under 42 U.S.C. §1983 and 28 U.S.C. §§2201 and 2202. This Court has authority to award attorneys fees pursuant to 42 U.S.C. §1988. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to hear and adjudicate state law claims.

5. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law suit in equity, or other proper proceeding for redress."

6. Jurisdiction of this Court is invoked under 28 USC § 1343. This action at law is for money damages arises under 42 USC § 1983 and the United States Constitution, the laws of the State of Arizona and common law principles to redress a deprivation under color of state law rights, privileges, and immunities secured to PLAINTiFFs by said statutes, and by the Amendments to the Constitution.

7. The amount in controversy exceeds $75,000 excluding interest and costs.

8. On March 1, 2019 PLAINTIFF delivered by certified mail, Notice of Claim to the Arizona Attorney General, the Pima County Attorney's Office, the Arizona Dept of Administration, and the Pima County Board of Supervisors pursuant to ARS 12-821.01.

**VENUE**

9. Venue is laid within the United States District Court for the District of Arizona in that City of Tucson is located within, and a substantial part of the events giving rise to the claim occurred within the boundaries of the District of Arizona.

**PARTIES**

10. PLAINTIFF, JENNIFER ANN LERMA, (herein after "PLAINTIFF") is a legal resident of the United States and at all times relevant, resided in Pima County, City of Tucson, and State of Arizona. PLAINTIFF was married to JUAN MAURICIO LERMA (hereinafter "LERMA") in Pima County on January 17, 2017. LERMA is a green card holder at all times relevant.

11. Defendant, ROBERT CLAYTON HERNANDEZ (herein after "HERNANDEZ"), is a legal resident of the United States, and at all times relevant, resided in Pima County, Arizona.    HERNANDEZ is licensed to practice law in the State of Arizona. HERNANDEZ is being sued individually.

12. Defendant, JACOB AMARU (herein after "AMARU"), is a legal resident of the United States, and at all times relevant, resided in Pima County, Arizona. AMARU is licensed to practice law in the State of Arizona. AMARU was appointed to represent LERMA by the Pima County Superior Court and the State of Arizona. AMARU is being sued as an individual acting under the color of law and individually.

13. Defendant, NICOLE KASETA (herein after "KASETA"), is a legal resident of the State of Arizona, and at all times relevant, resided in Pima County, Arizona. KASETA is employed by the Arizona State Bar and licensed to practice law in the State of Arizona. KASETA is being sued in her official capacity and/or as individual acting under the color of law.

14. Defendant, the ARIZONA STATE BAR (hereinafter "ASB"), operates in the State of Arizona and is a public corporation as provided by the State Bar Act of 1933, A.R.S. § 32-201 et seq. created the State Bar of Arizona as a public corporation. A.R.S § 32-201 provides

"There shall be a public corporation known as the State Bar of Arizona, designated in this chapter as the state bar, which shall have perpetual succession and a seal and may sue and be sued, and which, for the purpose of carrying into effect and promoting the objects of the corporation, may enter into contracts and acquire, hold, encumber, dispose of and deal in and with real and personal property."

The State Bar exists to serve and protect the public with respect to the provision · f legal services and access to justice. Consistent with these goals, the State Bar of Arizona seeks to improve the administration of justice and the competency, ethics, and professionalism of lawyers practicing in Arizona.

A state bar association is a *sui generis* association, many of whose important functions are directly related to and in aid of the judicial branch of government. *State ex rel. Schwab v. Washington State Bar Ass'n,* 80 Wash.2d 266, 493 P.2d 1237 (1972). A state bar has been described as "an administrative arm" of the Supreme Court. *Emslie v. State Bar of California,* 11 Cal. 3d 210, 113 Cal. Rptr. 175, 520 P.2d 991 (1974).

15. Defendant, KRISTI RINGLER (hereinafter "RINGLER"), is a legal resident of the State of Arizona, and at all times relevant, resided in Pima County, Arizona. RINGLER is employed by the Tucson Police Department and acting under the color of law. RINGLER is being sued in her official capacity and/or as individual acting under the color of law. RINGLER is the assistant to the Chief of Police of the Tucson Police Department. In that capacity, she is vested with authority to receive and respond on

behalf of the Tucson Police Department to requests for public records made pursuant to the Arizona Public Records Act.

16. Defendant, PIMA COUNTY ATTORNEYS OFFICE is an agency of the State of Arizona and County of Pima, and as such is governed by the public disclosure requirements of the Arizona Public Records Law, A.R.S. 39-121 to 128.

17. Defendant, LENORA ANDERSON (herein after "ANDERSON"), is a legal resident of the state of Arizona, and at all times relevant, resided in Pima County, Arizona. ANDERSON is employed by the Pima County Attorney's Office and acting under the color of law. ANDERSON is being sued in her official capacity and/or as individual acting under the color of law. ANDERSON is a paralegal at the PIMA COUNTY ATTORNEY's OFFICE. In that capacity, she is vested with authority to receive and respond on behalf of the PIMA COUNTY ATTORNEYS OFFIC

18. E to requests for public records made pursuant to the Arizona Public Records Act.

19. Defendant MARK BRNOVICH (herein after "BRNOVICH"), is a legal resident of the State of Arizona, and at all times relevant, resided in Maricopa County, Arizona. BRNOVICH is the Attorney General for the State of Arizona. BRNOVICH is being sued in his official capacity and/or as individual acting under the color of law. BRNOVICH is responsible for supervising all employees at the Arizona Attorney General's office.

20. Defendant KIMBERLEY LIPKO (herein after "LIPKO"), is a legal resident of the State of Arizona, and at all times relevant, resided in Maricopa County, Arizona and (to the best of PLAINTIFF's belief) is employed by the Arizona Attorney General and acting under the color of law. LIPKO is being sued in her official capacity and/or as an individual acting under the color of law

21. State employment is generally sufficient render the defendant a state actor" *Lagar v. Edmonson Oil Co., Inc., 457 U.S. 922,935, n.18 (1982).*

22. JUAN MAURICIO LERMA ("LERMA"), Petitioner's spouse, has given his full permission to PETITIONER to speak to his attorneys, request information on his behalf, to make decisions in his cases and do anything else PETITIONER deems necessary to protect his interests. As my husband, his interest is my interest. LERMA has affirmed permission on numerous occasions to HERNANDEZ and AMARU. HERNANDEZ has acknowledged this in writing. LERMA will affirm this to this Court at any time. PETITIONER recognizes she cannot legally represent her husband in Court, but when both counsels fail to protect the interest of LERMA, what other option remains

### RETAINED COUNSEL: ROBERT CLAYTON HERNANDEZ

23. PLAINTIFF hired HERNANDEZ to represent her then boyfriend, JUAN MAURICIO LERMA in late December 2016.

24. PLAINTIFF paid HERNANDEZ $35,000.00.

25. PLAINTIFF executed the fee agreement and provided her social security number on the agreement in the event of non-payment.

26. HERNANDEZ filed a Motion for Disclosure in CR20165683, State of Arizona v. Juan Mauricio Lerma and stated:

> *"Furthermore, this case is fraught with inconsistencies, convenient omissions and constitutional violations that created numerous legal issues. In particular, there are significant problems with the search warrant affidavit, which Juan will undoubtedly challenge, and what Detective Lopez and the other officers knew about the informant and his credibility issues will factor into the probable cause analysis. …… and to establish that Lopez knew about his unreliability, ignored it, and intentionally omitted it from his warrant affidavit to avoid judicial scrutiny"*

27. On April 10, 2018 PLAINTIFF sent correspondence to HERNANDEZ and stated, *"I just wanted to reiterate our office conference and the things we discussed with regard to requests. If you feel any of the items below will have a detrimental effect on his case, please inform me in writing so I can correctly relay back to him. 1. File for a Frank's Hearing."* (Correspondence to Hernandez , 04/10/2018)

28. On May 9, 2018, HERNANDEZ acknowledged that JUAN MAURICIO LLRMA (hereinafter "LERMA") had given permission to HERNANDEZ to speak to PLAINTIFF and provide any information requested by PLAINTIFF regarding his case. *"I will provide, Jennifer, your wife with copies of any documents or letters I send you or provide you during our visits."* (Correspondence, Hernandez & Hamilton, PC, 05/09/2018) On May 7, 2018 HERNANDEZ wrote PLAINTIFF an email stating *"I*

*spoke to Juan this morning. He asked me to follow your wishes as to my continued representation of him.*" (Email, 05/07/2018)

29. HERNANDEZ failed to represent JUAN MAURICIO LERMA adequately and fulfill his part of the agreement. HERNANDEZ failed to defend LERMA and failed to protect his interests.

30. On June 14, 2018, PLAINTIFF sent correspondence to HERNANDEZ and stated" *I sent you an email and asked that you file for a Frank's Hearing or inform me if you would not or could not. If you had no intention of filing for the Frank's Hearing all you had to do was respond and say that. Juan and I hired you and it is Juan's freedom at stake not yours. This is Juan wants you to proceed, He is your client and anything you do against what is below is choice you are making against the wishes of your client ..1. File for a Frank's Hearing.*" (Correspondene to Hernandez, 06/14/2018)

31. HERNANDEZ had full knowledge that his inaction to file for a Frank's hearing would deprive LERMA of his liberty and constitutional rights.

32. On May 30, 2018 HERNANDEZ wrote correspondence to the prosecutor in the case, CHRIS WARD and stated, "*Furthermore, Detective Lopez's misleading testimony in his warrant application also presents a strong Franks issue and calls into question the validity of the search warrant.*" (Correspondence, 05/30/2017). HERNANDEZ acknowledges the need for a Frank's Hearing. See *Frank's v. Delavare*, 438 U.S. 154, 168-69, 98 S. Ct. 2674 (1978) (a search warrant is illegal if the affiant knowingly,

intentionally, or with reckless disregard for the truth included a false statement in the affidavit and the statement was necessary to finding probable cause).

33. After more than a year passed, PLAINTIFF requested that HERNANDEZ file for a Frank's Hearing or provide a reason why he would not in writing. LERMA and PLAINTIFFF both offered to execute waivers releasing HERNANDEZ from liability if he thought a Frank's hearing would be detrimental to his case.

34. HERNANDEZ was ordered withdrawn from representation of LERMA on July 31, 2018. (Minute Entry, 07/31/2018)

35. PLAINTIFF requested a billing statement from HERNANDEZ.

36. On August 29, 2018 PLAINTIFF sent correspondence to HERNANDEZ *"I am writing this letter as a formal request for a billing statement regarding the hours worked on case C20165683. I have made multiple requests for this information. You informed me that we could discuss the billing once the withdrawal had been accomplished.  It has been a month and I stil have not even gotten a response from you or anyone in your office"*

37. On August 25, 2018 PLAINTIFF emailed HERNANDEZ, *"Why is it that you cant respond to any of my concerns? Why is it a conflict that I ask for a billing statement?"*

38. On November 19, 2018 PLAINTIFF sent correspondence to HERNANDEZ and stated, *"This is my 10th attempt to obtain a billing statement from you regarding CR20165683. I want a portion of that money returned immediately. Again, you failing to provide me*

*with any information is leaving my husband with an incompetent attorney. I asked you numerous times to file for a Frank's Hearing or provide a reason why in writing. We both agreed to execute waivers releasing you from liability if you felt filing for a Frank's Hearing was detrimental to his case. You refused to do either."* (Corresopndence to Hernandez, 11/19/2018)

39. As of the date of this complaint, PLAINTIFF and LERMA have not received any portion of the money back or a billing statement from HERNANDEZ.

40. LERMA is without retained counsel because of the actions of HERNANDEZ. HERNANDEZ has willfully and maliciously failed to represent LERMA, failed to return any portion of the money paid to him, and failed to provide a billing statement.

41. PLAINTIFF is without funds to hire counsel to represent her and LERMA's interests.

42. HERNANDEZ's actions have deprived PLAINTIFF her husband.

### STATE BAR OF ARIZONA

43. PLAINTIFF contacted the Arizona State Bar for assistance in obtaining money back from HERNANDEZ and a billing statement and was directed to NICOLE KASETA.

44. NICOLE KASETA would not assist PLAINTIFF in obtaining a billing statement or any portion of the monies back from HERNANDEZ.

45. On November 19, 2018 PLAINTIFF emailed KASETA and stated *"I am just wondering if you still will not help me obtain a billing statement from HERNANDEZ. I do not know how the appellate court is going to rule and need to hire counsel to file a complaint*

*against TPD before the statute runs on time which is soon in the event my motion is denied. I need that money from HERNANDEZ to hire counsel for my husband and me"* (Email Correspondence to Kaseta, 11/19/2018) Also see attached Email relating to bar complaint of HERNANDEZ dated October 9, 2018.

46. On October 5, 2018 KASETA stated, *"As stated below, the bar charge against Mr. Hernandez remains dismissed. Mr. Hernandez stated he would provide Juan an accounting if Juan requests one when his representation of Juan in the appeal is completed."*

47. On October 18, 2018 PLAINTIFF responded *"My husband has sent him correspondence regarding providing an accounting to me and permission to talk to me. My husband and I disagree and would request that whatever options are available through the state bar be utilized to come to an agreement. We paid him $35,000 and one matter is still pending. We would ask that you begin an investigation or inquiry into our claims now instead of waiting for the appellate court."*

48. On January 28, 2019 PLAINTIFF filed another bar complaint against HERNANDEZ.

49. The failure of KASTEA and the STATE BAR to assist PLAINTIFF to have HERNANDEZ return any portion of the money left LERMA and PLAINTIFF without financial means to acquire new counsel. HERNANDEZ, KASETA and the STATE BAR's actions deprived LERMA of his liberty and right to due process and deprived PLAINTIFF of her husband.

# ARIZONA ATTORNEY GENERAL

50. PLAINTIFF filed a complaint with the Arizona Attorney General's Office regarding the mishandling of RICO funds. (Criminal Complaint, 06/19/2018)

51. PLAINTIFF was contacted by KIMBERLY LIPKO of the Arizona Attorney General's Office.

52. Plaintiff emailed LIPKO and stated *"After re-reviewing your email, I need to inform you of the following issues. Your email stated you were not open to discussion at this point. The following are only facts that I thought you should be aware of prior to investigating my complaint. I am unsure of the exact complaint you are handling. I only made one complaint which I received a number through your office of 18-2265. This complaint was what I was inquiring about when I emailed your office. I received an email back from your office informing me to call the adjuster at Risk Management. Your email makes reference to records requests. My complaint to your office has nothing to do with records requests. My complaint dealt mainly with TPD/PCAO mishandling funds seized from me prior to a court order. I have multiple documents that can confirm this. The only mention I made of TPD and withholding records was in a Notice of Claim that was included as an attachment to a letter I sent your office complaining about the mishandling of funds seized from me and whether or not your office should noticed because of the lack of the currency and vehicles on Chain of Custody. The requests I believe you are referencing in email was one I made to OPS that dealt with their*

*investigation of my complaint to them. The Office of Professional Conduct of Tucson Police has released the records requests to me, although it was a year later. I am currently in litigation with the State regarding the seized funds. I am requesting information from your office about what was reported to your office regarding the seized funds. I am not sure if you are stating you cannot release this information to me or information regarding the records request to TPD at this point. If at any point you change your mind about discussing or wanting additional documents in my possession, please contact me. Thank you for your time."*

53. LIPKO completely ignored the RICO allegations and instead addressed an issue regarding releasing of records by Tucson Police. LIPKO stated, "*I am going to bring your complaint up at our next prosecution meeting in regard to TPD failing to release public records. Please keep in mind two things: If this is an ongoing investigation, the report may not be available for release at this time. Secondly, I will contact you again once the meeting has occurred. We just had July's meeting yesterday and do not have August's schedule yet. I am not open for discussion at this point in regards to your matter as it needs to be decided at the prosecution level and I am not an attorney*" (Email Correspondence Kimberley Lipko, 07/11/2018)

54. PLAINTIFF informed LIPKO that RICO violations was the issue and not the releasing of records. PLAINTIFF would not have contacted the Attorney General to help obtain records from TPD.

55. LIPKO did not contact PLAINTIFF in a month. PLAINTIFF attempted to contact LIPKO by calling her. PLAINTIFF was informed that no one by the name of KIMBERLEY LIPKO has ever been employed there.

### PIMA COUNTY ATTORNEY'S OFFICE

56. On August 31, 2018, PLAINTIFF requested documents from the PIMA COUNTY ATTORNEY's OFFICE, "*I would like documentation relating to the money seized from my residence on December 14, 2016 that was forfeited under court order. I want documentation showing the transfer of funds form the "holding account" to the anti-racketeering fund. I want to see the exact amount that was transferred for my case, account statements from both accounts, the exact date it was transferred, the person(s) who authorized the transfer.... Mr. Krejci insisted that the bond remain on the judgment in Dec 2017. Since I was unable to pay the bond, I assume the money was transferred long ago or he never would have fought to keep the bond on the judgment.*" (Correspondence form Julie Hazen Yee, 10/05/2018)

57. On October 5, 2018, JULIE HAZEN-YEE emailed correspondence to PLAINTIFF in response to PLAINTIFF's records request under the Freedom of Information "*We have completed our search for records responsive to your request our office received in an email dated August 31, 2018. The Pima County Attorney's Office has no records responsive to your request.*" (Correspondence form Julie Hazen Yee, 10/05/2018)

### LYNN ERIBE: TUCSON POLICE DEPARTMENT

58. PLAINTIFF contacted TUCSON POLICE records to obtain information relating to movement of the money seized from her residence.

59. On November 16, 2018 PLAINTIFF received a response from ERIEE. "*There has no been no transfer of currency or proceeds to* (Correspondence from Tucson Police , 11/16/2018)

60. No one has provided an electronic statement of the funds

## COUNSEL APPOINTED: JACOB AMARU

61. AMARU was appointed to represent LERMA after the withdrawal of HERNANDEZ.

62. AMARU obtained a No Contact Order against PLAINTIFF because PLAINTIFF wanted to provide AMARU with beneficial information.

63. PLAINTIFF and LERMA also requested that he file for a Franks Hearing.  AMARU represented LERMA from July 31, 2018 until April of 2019.

64. To the best of PLAINTIFFs knowledge AMARU did not complete one interview.

65. AMARU never filed for a Franks' Hearing.

66. On August 31, 2018 PLAINTIFF emailed AMARU, "*My husband is requesting you file for a motion for a Franks hearing based on the motion for disclosure filed by his previous counsel in February of 2018. He would tell you himself, but he cannot call you from ADC.  He informed me yesterday that you have not set it up or informed ADC you are his counsel. If you will not file for a Franks hearing please inform me so I can relay to him.*"

### 67. Count I

## VIOLATION OF RIGHTS UNDER THE FIFTH AMENDMENT

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

68. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

69. HERNANDEZ and AMAU knew their inactions would deprive LERMA of his liberty.

70. These actions caused damages to LERMA and PLAINTIFF.

## Count II
## VIOLATION OF RIGHTS UNDER THE SIXTH AMENDMENT

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense

71. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

72. HERNANDEZ and AMARU failed to assist LERMA in his defense on purpose. They both were aware of the problems with the Affidavit and chose to do nothing.

73. These actions causes damages to PLAINTIFF and LERMA.

## Count III
## INTENTIONAL EMOTIONAL DURESS

74. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

75. KASETA and LIPKO knew the consequences of her actions in denying assistance to PLAINTIFF for help would cause emotional duress for PLAINTIFF because KASETA knew PLAINTIFF had no other option or agency to contact for assistance. KASETA maliciously denied assistance to PLAINTIFF.

76. AMARU and HERNANDEZ knew their inactions would deprive PLAINTIFF of her husband and cause emotional duress.

77. AMARU filing for a No Contact Order against PLAINTIFF caused emotional duress to PLAINTIFF.

78. ERIBE failure to provide accurate records cause emotional duress to PLAINTIFF.

79. ANDERSON and HAZEN-YEE intentionally denied records request that deprived PLAINITFF of due process would cause emotional duress

80. These actions caused damages to PLAINTIFF.

## Count IV
## VIOLATION OF RIGHTS OF THE FOURTENTH AMENDMENT

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law

81. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

82. KASETA, HAZEN-YEE, ANDERSON, and LIPKO interfered with PLAINITFF's property interests by purposely denying records under their control.

83. KASETA, HAZEN-YEE, ANDERSON, ERIBE and LIPKO ignored procedural and substantive Due Process requirements in failing to provide documents.

84. HERNANDEZ and AMARU knew their inactions would deprive LERMA of his rights and PLAINTIFF of her husband. Any person deprived of liberty, property, and effective counsel will have emotional duress.

85. These actions have caused damages to PLAINTIFF and LERMA.

## Count V
## LEGAL MALPRACTICE

86. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

87. Legal malpractice is defined as the "failure of an attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in performance of tasks which they undertake, and when such failure proximately causes damage it gives rise to an action in tort." *Black's Law Dictionary* 959 (6th ed. 1990).

88. HERNANDEZ and AMARU committed malpractice by intentionally not filing for a Frank's hearing knowing it would deprive LERMA of liberty and PLAINTIFF of her husband.

89. These actions caused damages to LERMA and PLAINTIFF.

## Count VI

PAGE 19 OF 26

**CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS**

90. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

91. All DEFENDANTS were informed of the allegations of wrongdoing of each other by PLAINTIFF and knowingly deprived PLAINTIFF and LERMA of constitutional rights by conspiring with other Defendants.

92. These actions caused damages to LERMA and PLAINITFF.

### Count VII
### FAILURE TO INTERVENE

93. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

94. BRNOVICH is responsible for the oversight of all employees at the Arizona Attorney General's office. He failed to intervene when PLAINITFF was denied assistance to investigate her complaint.

95. LAWALL is responsible for the oversight of all employees at the PIMA COUNTY ATTORNEY's office. She failed to intervene when PLAINITFF was denied assistance to investigate her complaint.

### Count VIII
### LOSS OF CONSORTIUM

96. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

97. The STATE BAR OF ARIZONA and KASETA deprived PLAINTIFF of her husband by purposely refusing to assist PLAINTIFF and dismissing her complaint.

98. ERIBE deprived PLAINTIFF of her husband by providing falsified records to shield wrongdoings of the PIMA COUNTY ATTORNEY'S OFFICE.

99. ANDERSON and HAZEN-YEE purposely withheld records from PLAINITFF that led to the continued imprisonment of LERMA depriving PLAINTIFF of her husband .

100.    These actions caused damages to PLAINTIFF and LERMA.

**Count VIIII**
**BREACH OF CONTRACT**

101.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

102.    A claim for legal malpractice accrues when: (1) the plaintiff knows or reasonably should know of the attorney's negligent conduct; and (2) the plaintiff's damages are ascertainable, and not speculative or contingent. *Id.* at 579, 816 P.2d at 236

103.    HERNANDEZ breached his contract with LERMA and PLAINTIFF in failing to properly represent LERMA.

104.    These actions caused damages to PLAINTIFF and LERMA.

**COUNT X**

**STRICT LIABILITY UNDER A.R.S. 39-121.02 (C)**

105.    PLAINTIFF AND LERMA incorporates all allegations, denials, and statements set forth in paragraphs 1 through 140 into this Count

106.    Any person who is wrongfully denied access to public records pursuant to this article has a cause of action against the officer or public body for any damages resulting from the denial. The plain language of Arizona public record laws requires the

PAGE 21 OF 26

custodian of public records to "promptly" furnish records upon request. Arizona law

defines prompt as "quick to act or to what is required" or "done, spoken, etc. at once

without delay". W. Valley View, Inc. v. Maricopa City Sheriff's Office, 216 Ariz. 255,

230 (App. 2007). The failure to promptly furnish records constitutes a wrongful denial

as a matter of law. Phoenix New Times, 217 Ariz. At 538 13. The failure of ERIBE,

ANDERSON, HAZEN-YEE, and LIPKO to release the requested records promptly left

PLAINTIFF unable to defend an action of the illegal arrest of her husband and illegal

taking of her property.

107.    The conduct described in this Count was undertaken by ERIBE, HAZEN-YEE,

ANDERSON AND LIPKO with malice, willfulness, and deliberate indifference to

PLAINTIFF AND LERMA.

108.    As a result of this conduct, PLAINTIFF AND LERMA suffered damages.

**COUNT XI**
**UNKNOWN COUNTS**

109.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

110.    Plaintiff reserves the right to include claims unknown. PLAINTIFF is without

counsel because of the direct actions of all defendants.

**PRO SE COMPLAINT**

111.    A court must liberally construe the filings of a *pro se* plaintiff and afford the
plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342
(9th Cir. 2010). "'Unless it is absolutely clear that no amendment can cure the
defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and

an opportunity to amend prior to dismissal of the action.'" *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016)

112.    The action of all defendants in this case have deprived PLAINTIFF's of money that would have been utilized to obtain counsel.  Therefore, PLAINTIFF would like reserve the right to amend to include issues, claims, counts, or caselaw that an attorney would have been most likely would have included/excluded in complaint that is unknown to PLAINTIFFs.  If PLAINTIFF has failed to raise issues or state claims that an attorney would most likely have, then PLAINTIFFs reserve the right to include.

## EXHIBITS

113.    The attached exhibits are true and correct copies of documents and emails I sent or received.

    a.  Communications between HERNANDEZ and PLAINTIFF

    b.  Communications between AMARU and PLAINTIFF

    c.  Communications between KASETA and PLAINTIFF

    d.  Communications between ERIBE and PLAINTIFF

    e.  Communications between ANDERSON/HAZEN-YEE and PLAINTIFF

## DAMAGES

114.    PLAINTIFF suffered the loss of property, the loss of her husband (he was imprisoned), loss of confidence in the judicial system, the loss of feeling secure, emotional duress.  PLAINTIFF was left to defend her husband and property without an attorney and without any assistance of agency despite repeated violations of law and

court rules.   To include and federal code or Arizona Statute that allows for compensation under these circumstances.

A. For compensatory, punitive and exemplary damages in an amount to fully and fairly compensate PLAINTIFF and community property for damages.

B. For legal costs and expenses incurred herein; and

C. For such other and further relief as the Court deems just and proper in the premises.

D. Loss of Property

E. Emotional Distress for two years, Negligence, Fraud, and Violations of Constitutional Rights

F. Monetary punishment to discourage future behavior of this type.

G. Attorney Fees paid in criminal case

H. Attorney Fees paid in civil case

I. Costs Pursuant to A.R.S. § 12-348 (A)(6)

J. Interest pursuant to A.R.S. § 12-347

K. Double Damages pursuant to A.R.S. § 39-121.02

L. Treble Damages pursuant to ARS § 13-4314(F)

PLAINTIFF seeks $10 million dollars individually and $10 million dollars as community property.

PAGE 24 OF 26

ELECTRONICALLY SUBMITTED this 19th day of JULY 2019.


JENNIFER ANN LERMA, individually,
Pro Se, PLAINTIFF

JENNIFER ANN LERMA, as a married
woman, Pro Se, PLAINTIFF

PAGE 25 OF 26